REVISED 3/19/99

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-30044
_____


WAYNE THERIOT, individually and on behalf
of his two minor children, Micah Theriot and
Raine Theriot; LYNN THERIOT; DONOVAN THERIOT,

                                    Plaintiffs-Appellants,

MICAH THERIOT; RAINE THERIOT,

                                    Movants-Appellants,

                    versus

DANEK MEDICAL, INC., ET AL.,

                                    Defendants,

DANEK MEDICAL, INC.,

                                    Defendant-Appellee.
_____

        Appeals from the United States District Court for the
                    Eastern District of Louisiana
_____
                        March 10, 1999
Before JOLLY, WIENER, and PARKER, Circuit Judges.

PER CURIAM:

     Wayne Theriot appeals a district court summary judgment ruling

in favor Danek Medical, Inc. ("Danek").  He argues that the

district court erred when it concluded that he failed to provide

evidence that the pedicle screw sold by Danek was defective in

design and when it concluded that Danek had adequately warned the

treating physician of potential side effects.  As we find no error on the part of the district court, we affirm.

I

Danek sells multiple component systems that are used as internal fixation devices for the treatment of degenerative, traumatic, and other disorders of the spine.  Orthopedic and neurological surgeons who specialize in spinal procedures use components of Danek's systems as an adjunct to spinal fusion surgery to immobilize the vertebrae.

As part of a series of treatments for his back problems, Theriot underwent surgery in which his orthopedic surgeon, Dr. Charles R. Billings, used Danek plates and pedicle screws to help achieve fusion.  The parties contest the success of the operation.  Theriot claims he is now in constant pain and needs another operation to remove the Danek components.  Danek claims that the products accomplished a solid fusion and that none of the plates and screws has broken, loosened, or failed.

Theriot sued Danek, claiming that the pedicle screws sold by Danek were defective. On October 3, 1994, the suit was transferred to the Eastern District of Pennsylvania for multidistrict litigation, In re: Orthopedic Bone Screw Products Liability Litigation, MDL 1014.  The suit was then remanded back to the Eastern District of Louisiana with advice from the MDL court that "discovery has been completed with regard to substantially all

2

issues." <u>In re: Orthopedic Bone Screw Products Liability Litigation</u>, MDL 1014 at 10 (E.D. Pa. Aug. 29, 1997) (Pretrial Order No. 1056).

The district court granted summary judgment for Danek on the only remaining claim--that Danek had violated the Louisiana Products Liability Act ("LPLA"), LSA R.S. 9:2800.52 et seq. Theriot then filed a motion to reconsider, which was denied, and appealed to this court. While the case was on appeal, Theriot claims to have discovered new evidence withheld by Danek that, if known, would have led the district court to deny Danek's motion for summary judgment. Theriot filed motions in this court requesting us to grant a stay and to order the district court to reconsider its summary judgment motion. Both motions were denied. In addition, Theriot filed a motion in the district court pursuant to rule 60(b)(2) seeking relief from the district court's final judgment. That motion also was denied.

## II

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A summary judgment ruling is reviewed <u>de novo</u>, applying the same criteria employed by the

district court.  Conkling v. Turner, 18 F.3d 1285, 1295 (5th Cir. 1994).

Under the LPLA, there are four theories under which a plaintiff may demonstrate that a product is defective.  On appeal, Theriot only alleges two of them: (1) that the product was defective in design and (2) that the product was unreasonably dangerous due to inadequate warning.

A

Under the LPLA, in order to prove that a product has a defective design, the plaintiff must show that an alternative design existed capable of preventing the claimant's damage.  La. Rev. Stat. § 9:2800.56.  Because Theriot did not present evidence of an alternative design to the pedicle screw sold by Danek, the district court held that a rational trier of fact could not conclude that the product was defective.

Theriot advances four arguments to challenge this holding: (1) that the surgical treatments that do not use pedicle screws should be considered alternative designs under the LPLA; (2) that there was evidence of other alternative designs; (3) that, in this case, evidence of an alternative design is unnecessary; and (4) that new evidence withheld by Danek would have demonstrated the existence of an alternative design.

Theriot claims that the product at issue here is a product whose purpose is to provide biomechanical stability.  Theriot

4

therefore argues that other products that do not use pedicle screws should be considered as alternative designs, such as external neck braces or internal systems that use hooks or wires. Underlying this argument is the assumption that all pedicle screws are defective and there can be no system using pedicle screws that would be an acceptable product. The problem with this argument is that it really takes issue with the choice of treatment made by Theriot's physician, not with a specific fault of the pedicle screw sold by Danek.

Theriot next argues that there existed alternative designs to the pedicle screws used by Danek. Theriot does not explain, however, how he presented evidence of an alternative design to the district court. It may well be that an alternative pedicle screw design exists that Theriot could have relied on in making his claim. In order to reverse the summary judgment ruling, however, Theriot must show that he presented such a design to the attention of the district court.

Theriot also claims that he should not have to present evidence at the summary judgment phase that he has an alternative design. Instead, if he can show the grievous extent to which the product causes harm, he should be able to proceed to a jury trial. This argument asks the court to disregard the requirements of the LPLA and the district court properly refused to do so.

Finally, Theriot argues that because Danek withheld information about alternative designs, Theriot should be able to rely on his newly discovered evidence in responding to the motion for summary judgment. It is not necessary for us to determine whether the district court was correct in its ruling on the appellant's 60(b)(2) motion since the appellant has failed to demonstrate that the withheld information would have provided the appellant with evidence sufficient to satisfy his burden of establishing the existence of an alternate design under the LPLA.

After a review of the record, a study of the briefs, and consideration of the oral argument presented in this case, we conclude that the district court did not err in holding that Theriot failed to demonstrate an alternative design under the LPLA. We find this failure fatal to Theriot's claim that the Danek's product was unreasonably dangerous due to a design defect.

B

Theriot's second claim is that Danek failed to provide adequate warnings. Because this case involves a medical product, the learned intermediary doctrine applies. See, e.g., Willett v. Baxter Intern., Inc., 929 F.2d 1094, 1098-99 (5th Cir. 1991). Under the learned intermediary doctrine, Danek had an obligation to inform Dr. Billings of the risks of pedicle screws. Despite the fact that Dr. Billings has testified that he was fully apprised of the potential risks of the product, Theriot argues that Danek did

6

not fulfill this obligation.  Theriot argues that because Danek did not adequately test the product, Danek could not properly inform Dr. Billings of the risks and, since Dr. Billings cannot have been properly informed, his belief that he was is irrelevant.

In essence, Theriot is arguing that he should be permitted to proceed to trial if Danek cannot demonstrate that it adequately tested its product.  There is no basis in the LPLA or case law for such a rule and we therefore conclude that the district court did not err in granting summary judgment.

III

For the foregoing reasons, the judgment of the district court is

A F F I R M E D.

7